IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES A. B.,[1]                )
                               )
          Plaintiff,           )
                               )
vs.                            )   Civil No. 18-cv-0814-CJP[2]
                               )
COMMISSIONER OF SOCIAL         )
SECURITY,                      )
                               )
          Defendant.           )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in June 2014, alleging disability beginning on January 15, 2014. After holding an evidentiary hearing, ALJ Kevin R. Martin denied the application on June 15, 2017. (Tr. 40-53). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 12.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1.      Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity finding;

2.      Whether the ALJ erred in failing to identify and reconcile apparent conflicts between the VE's testimony and the *Dictionary of Occupational Titles* (DOT); and

3.      Whether the ALJ erred in in failing to elicit evidence of regional job incidence data.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step

3

three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve

4

conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Martin followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of status post right foot fracture, asthma, degenerative disc disease, post-traumatic stress disorder, panic disorder with agoraphobia, generalized anxiety disorder, and alcohol abuse. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the following residual functional capacity (RFC):

> able to perform a full range of work at the light exertional level except can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolding, can frequently balance, stoop, kneel, crouch, and crawl, needs to avoid concentrated exposure to extreme cold, extreme heat and humidity, wetness, and other respiratory irritants such as fumes, odors, dust, gases, and poor ventilation, avoid concentrated exposure to vibration, and hazards such as unprotected heights, is able to understand, remember, and carry out short, simple instructions for performance of simple tasks on a sustained basis in a work setting that does not require interaction with the general public, and is able to respond appropriately to simple changes in a routine work setting.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work as a carpenter or a saw operator feeder.

However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical treatment.

1. Agency Forms

Plaintiff was born in 1967 and was 46 years old on the alleged date of onset. A prior application had been denied as of January 11, 2012. (Tr. 232). He stopped working as of January 15, 2014. (Tr. 236).

2. State Agency Consultants' Mental RFC Assessments

In November 2014, acting as a state agency consultant, Howard Tin, Psy.D., assessed plaintiff's mental RFC based on a review of the file contents. He used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 110-112). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas. The form explains that the "actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 110).

Dr. Tin answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions and in ability to maintain attention and concentration for extended periods. He also rated plaintiff as

moderately limited in ability to work in coordination with or in proximity to others without being distracted by them.

Dr. Tin answered "yes" to the question "Does the individual have social interaction limitations?" He rated plaintiff as "moderately limited" in ability to interact appropriately with the public and ability to get along with coworkers without distracting then or exhibiting behavioral extremes.

Dr. Tin answered "yes" to the question "Does the individual have adaptation limitations?" He rated plaintiff as "moderately limited" in ability to set realistic goals or make plans independently of others.

In the sections for "narrative discussion" under each of the above areas, Dr. Tin wrote "see below." This apparently refers to the last area of the form, entitled "MRFC-Additional Explanation." Here, Dr. Tin wrote, "Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however, the person is capable of performing simple tasks." He also wrote that plaintiff should be limited to tasks that do not require interaction with the general public.

In July 2015, a second state agency consultant, Donald Henson, Ph.D., assessed plaintiff's mental RFC using a different version of the form completed by Dr. Tin. (Tr. 472-474). This version of the form asks the consultant to rate the claimant's degree of limitation in a number of areas of functioning by checking a box. Like the form completed by Dr. Tin, the "check box" portion of the form is divided into four main categories: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.

Dr. Henson rated plaintiff as moderately limited (as opposed to "no evidence of limitation" or "not significantly limited" or "markedly limited") in the following areas:

- Ability to carry out detailed instructions;
- Ability to maintain attention and concentration for extended periods;
- Ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
- Ability to interact appropriately with the general public.

All the above areas except for ability to interact with the general public fall under the main category of "sustained concentration and persistence."

In narrative remarks at the end of the form, Dr. Henson wrote that plaintiff had "sufficient cognitive and attentional abilities to perform simple routine activities which . . . have few social demands" and that he was "Capable of unskilled vocational activities."

3.     Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in April 2017. (Tr. 72).

Plaintiff testified regarding his symptoms, medical treatment, and daily activities. (Tr. 79-93).

A vocational expert (VE) also testified. The ALJ asked her whether she understood that, if she "gave us an opinion that conflicts with the information

contained in the Dictionary of Occupational Titles you need to advise of the conflict and the basis for your opinion?" She replied that she did. (Tr. 93-94).

The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with plaintiff's RFC: inspector and sorter (DOT 529.687-114), stock clerk (DOT 209.578-034), and general production worker (DOT 222.687-014). The VE testified to the number of each of those jobs in the nation, but not in the region. (Tr. 94-96).

The VE testified that a person who was off-task for 15% of the workday or who took extra breaks or repeatedly left work early would not be employable. (Tr. 96-97).

Plaintiff's counsel did not raise an issue at the hearing regarding the job numbers or identify any conflict with the DOT.

## **Analysis**

Plaintiff's second and third arguments can be swiftly disposed of.

He argues that ALJ failed to sufficiently identify and reconcile conflicts between the VE's testimony and the DOT. He contends that the VE's testimony conflicted with information in the DOT because the hypothetical question included mental limitations that are not addressed by the DOT, i.e.," interaction with the general public or the nature of changes in 'routine work setting.'" Doc. 14, p. 15.

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform his past work, the Commissioner bears the burden of showing that he is capable of performing other jobs that exist in significant numbers in the

9

economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.[4] An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See, 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

For each job title, the DOT specifies whether certain physical and mental activities are required, and, if so, the frequency with which they are required. The DOT does not, of course, speak to every possible aspect of the job title.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ asked the VE about conflicts, and none were identified.

Plaintiff argues that there was a conflict because the VE testified about limitations that are not addressed in the DOT. Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary

---

[4]The agency is developing a replacement for the DOT, referred to as the "Occupational Information System." This system will be the "primary source of occupational information SSA staff use in our disability adjudication process." This system is projected to be implemented in 2020. https://www.ssa.gov/disabilityresearch/occupational_info_systems.html, visited on January 9, 2019.

hearing.[5] Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Defendant argues that there is no conflict at all where the VE testifies about subjects not addressed in the DOT, citing *Collins v. Berryhill*, 743 F. App'x 21 (7th Cir. 2018), reh'g denied (Sept. 24, 2018). The Court agrees. Although *Collins* is nonprecedential, its reasoning is persuasive. The Seventh Circuit found that there was a conflict where the VE testified about a topic addressed in the DOT (exertional level), but there was not a conflict where the DOT was silent (sit/stand option). *Collins*, 743 F. App'x at 25-26. See also, *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008). Plaintiff has not identified any conflict, much less an apparent one.

For his second point, plaintiff argues the ALJ's decision was erroneous because the VE only identified job-numbers on a national level and not per region. According to 20 C.F.R. § 404.1512(b)(3), the Commissioner is responsible for providing "evidence about the existence of work in the national economy that [a claimant] can do . . . ." "Work in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 243(d)(2)(A). The purpose of this provision is to prevent the Social Security Administration from denying benefits based on

---

[5] Plaintiff is represented by a different attorney in this Court.

"isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the applicant lives." *Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004)(internal quotations and citations omitted). However, if work exists in several regions, it does not matter whether work exists in the immediate area where a claimant lives. If a significant number of jobs that can be performed by the claimant exists in either the local, regional, or national economy, "the claimant loses." *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014)

Plaintiff does not argue the jobs identified by the VE exist only in isolation or in concentrated regions. Any such argument would be frivolous. The jobs identified by the VE are not regional. Moreover, plaintiff did not dispute the VE's testimony regarding the job-numbers at the hearing and an ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004).

Plaintiff's first argument fares better. Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive

tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 46).

The ALJ gave "great weight" to the narrative explanation in the mental RFC assessment forms completed by Drs. Tin and Henson. He acknowledged that counsel for plaintiff had argued that the totality of moderate limitations found by those doctors would "result in the claimant not being a reliable enough employee to be able to sustain competitive employment." However, he gave "greater weight" to the conclusion in the narrative section that plaintiff was capable of simple unskilled tasks with no public interaction. (Tr. 50).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years.

*O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

The Commissioner argues that the ALJ reasonably relied on the narrative portions of the state agency consultants' reports. Citing *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015), she argues that "An ALJ may reasonably rely on a state-agency reviewing psychologist's narrative opinion so long as it is not inconsistent with the psychologist's general ratings assigned to each area of mental functioning in the first section of the form." Doc. 20, p. 4. She then attempts to demonstrate that the narrative opinion that plaintiff can do simple unskilled work is not inconsistent with the consultants' findings in the first section of the form.

The difficulty with defendant's argument is that neither the consultants nor the ALJ explained *how* a limitation to simple unskilled work accommodates moderate limitations in ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick

14

with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. periods.

Further, the ALJ cannot simply ignore the consultant's answers to the questions in the first part of the mental RFC form. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). Defendant attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). But, a moderate limitation is not the same as "no" limitation. The source cited by defendant explains that a "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited." Moderate is between mild and marked. 81 Fed. Reg. 66138, 66164. Therefore, a moderate limitation is more than a slight limitation, and the ALJ may not ignore the state agency consultants' designation of moderate limitations.

The conclusions of the consultants and of the ALJ regarding plaintiff's social limitations also refute defendant's attempt to minimize the significance of the findings of moderate limitations. Both consultants found plaintiff to be moderately limited in ability to interact with the general public and they concluded

15

that he should be restricted to work that does not require such interaction, as did the ALJ. This demonstrates that the state agency consultants and the ALJ understood that a moderate limitation is serious enough to require accommodation.

The ALJ's error requires remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: January 11, 2019.**

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**